The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner. The appealing party has shown good grounds to reconsider the evidence. The Full Commission reverses the Deputy Commissioners Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties through a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. The parties are subject to and bound by the N.C. Workers Compensation Act.
2. An employee-employer relationship existed between plaintiff and defendant-employer at all relevant times in question.
3. The carrier on the risk is Zurich American Insurance, Inc.
4. Plaintiffs average weekly wage is $446.32, yielding a compensation rate of $297.56 per week as calculated from the wage chart.
5. Defendants admit plaintiff sustained a compensable injury by accident on or about October 17, 1997, arising out of and in the course of her employment.
6. Defendants admit plaintiffs left arm injury, but deny that the right arm was injured as a result of the injury by accident.
7. Various medical records and other documents have been stipulated into evidence with the Pre-Trial Agreement, and are marked as Stipulated Exhibit #1.
8. The depositions of Dr. Peter Hurley, Dr. Doug Nelson and Dr. Andrea Stutesman are a part of the evidentiary record in this matter.
 ***********
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows
 FINDINGS OF FACT
1. Plaintiff worked from December 1992 as a staff supervisor for defendant-employer that provides a group home and supervision for mentally and physically disabled persons. Plaintiffs prior medical history includes a right carpal tunnel syndrome release surgery around 1987, ulnar surgery in the 1980s and a 1986 neck surgery.
2. On Friday, October 17, 1997, plaintiff sustained an admittedly compensable injury by accident to her left wrist arising out of and in the course of her employment with defendant-employer when she was involved in a struggle with an aggressive patient who was 15 years old, 510 tall and weighed about one hundred five (105) pounds. To control the patient with an approved procedure, plaintiff grabbed the patient from behind in a "therapeutic hold. She alleges that in the process of restraining the client, she fell forward and struck her elbows on the floor. Plaintiff reported to her supervisor, Ken Martin, that she injured her left arm during the incident. At this time plaintiff failed to mention any right-sided complaints.
3. By the early morning of the following day, October 18, 1997, plaintiff noticed her left wrist was swollen. Within approximately a week after the injury, plaintiff began to experience a mild burning sensation in her right arm. However, when plaintiff filled out an Accident Report on November 7, 1997, she failed to mention any right-sided complaints and stated that she had turned her left wrist and it was bruised.
4. On November 7, 1997 when plaintiff filled out the report, she met with Mary Jane Mahoney, an LPN with defendant-employer, who examined plaintiff. Nurse Mahoney then filled in a section of the report and indicated that the left wrist was injured with some numbness and tingling in plaintiffs "pinky finger. There was no mention to Nurse Mahoney of complaints involving plaintiffs right arm, wrist, or shoulder.
5. Ms. Amy Harris, plaintiffs co-worker, recalled that while plaintiffs left arm eventually improved, plaintiffs right shoulder was painful. Plaintiffs spouse also confirmed that plaintiff had symptoms in the right arm and shoulder, although the left arm symptoms were initially more severe. These two witnesses are lay witnesses and are not qualified to provide testimony regarding medical causation. Furthermore, plaintiffs spouse is not a disinterested witness.
6. Plaintiff was seen by Dr. John Douglas Nelson, a family physician, on November 17, 1997, December 1, 1997 and January 5, 1998. However, one of Dr. Nelsons staff took a complete history of plaintiffs condition on November 10, 1997. Again, plaintiff indicated that her left arm was twisted during a therapeutic hold and that she was experiencing some burning in her fourth and fifth finger and up to her elbow. There was no mention of right-sided complaints during any of these four visits. Dr. Nelson diagnosed a contusion to the left ulnar nerve.
7. Plaintiff first reported right arm symptoms to Dr. Nelson on February 16, 1998 almost 4 months after the injury. Dr. Nelson indicated that plaintiffs right arm condition was not causally related to her injury by accident of October 17, 1997. The opinion of Dr. Nelson is afforded much weigh as he was in the best position to evaluate her injuries and the causation relationship since he saw her in close proximity to the October 17, 1997 injury.
8. Plaintiff was also seen by Dr. Andrea Stutesman, who specializes in physical medicine and rehabilitation, on January 15, 1998 and February 26, 1998. Plaintiff did not indicate any right arm complaints to her until February 26, 1998. Dr. Stutesman performed nerve conduction studies on plaintiff and could find no objective basis for plaintiffs pain. Dr. Stutesman ruled out left ulnar nerve neuropathy and suggested that plaintiff was suffering from depression. Dr. Stutesman found that plaintiff had no permanent impairment and released plaintiff at maximum medical improvement and returned her to work with no restrictions. Dr. Stutesman did not find plaintiffs condition to be consistent with rotator cuff tear and could not state to a reasonable degree of medical certainty that the October 17, 1997 accident caused a rotator cuff tear of her right shoulder.
9. Thereafter an MRI was ordered by Dr. Richard Marcus who referred plaintiff to Dr. Peter Hurley, an orthopedic surgeon, on April 16, 1998, 5 months post injury. Dr. Hurley diagnosed a right shoulder rotator cuff injury and performed surgery to repair the tear of the right rotator cuff tendon on May 29, 1998. Dr. Hurley released plaintiff to regular-duty work on November 9, 1998.
10. Although Dr. Hurley indicated that the injury by accident on October 17, 1997 from which plaintiff suffered could have caused plaintiffs right rotator cuff injury, his opinion is afforded less weight than the opinions of Dr. Nelson and Dr. Stutesman.
11. Plaintiffs admittedly compensable injury by accident of October 17, 1997, resulted in minor problems with her left arm and wrist. However, the greater weight of the evidence of record fails to establish that plaintiffs right-sided rotator cuff injury was related to her admittedly compensable injury by accident of October 17, 1997.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission concludes as
 CONCLUSIONS OF LAW
1. On October 17, 1997, plaintiff sustained an admittedly compensable injury by accident, which arose out of and in the course of her employment with defendant-employer, which resulted in minor injuries to her left arm and wrist. However, plaintiff has suffered no disability as a result of her left-sided complaints. G.S. 97-2(6); 97-29.
2. However, plaintiff has failed to establish by the greater weight of the evidence that as a direct and proximate result of plaintiffs work-related injury by accident on October 17, 1997, she sustained any injury to her right shoulders. Therefore, plaintiff is entitled to no workers compensation benefits as a result of her right-sided complaints. G.S. 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 ORDER
1. Plaintiffs claim for workers compensation benefits as a result of her right-sided complaints must be, and the same is, hereby Denied.
2. Defendants shall bear the costs.
This the ___ day of August 2000.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
S/_____________ THOMAS J. BOLCH COMMISSION
DCS:nwg